IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-354-FL

| | |
|---|---|
| SAMUEL WALLACE, MARK JONES, ) | |
| and JIMMY TAYLOR, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SGT. DARRYL EUGENE COULTER, SR., ) | |
| and TOWN OF SPRING LAKE, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on defendants' motion for summary judgment (DE 58). Plaintiffs have responded in opposition, and defendants replied. In this posture, issues raised are ripe for ruling. For the reasons given below, the court grants the motion.

**STATEMENT OF THE CASE**

On July 30, 2010, plaintiffs Samuel Wallace ("Wallace"), Mark Jones ("Jones"), and Jimmy Taylor ("Taylor") initiated this action by complaint filed in Cumberland County Superior Court against the Town of Spring Lake ("Spring Lake"), as well as Sergeant Alonzo Whittington ("Whittington," no longer a party) and Sergeant Darryl Coulter, Sr. ("Coulter") – both formerly officers with the Spring Lake Police Department ("SLPD"). Defendants removed the action to this court on September 2, 2010. Plaintiffs allege that on April 27, 2008, they were forced at gunpoint from a residence located at 427 Vass Road in Spring Lake, North Carolina, handcuffed, and made to lie on the ground for several hours in the rain while SLPD officers searched their house without warrant or probable cause. Plaintiffs assert the following claims for relief (1) "Respondeat

Superior," (2) "42 U.S.C. § 1983," (3) "Negligence – City of Raleigh [sic] of Spring Lake," (4) "False Imprisonment," (5) "Assault [and Battery]," and (6) "Trespass." Compl. 4, 5, 7, 8.

At telephonic pretrial conference held on November 19, 2010, plaintiffs moved to dismiss Whittington without prejudice, and the court granted such motion. At said conference, the parties also discussed the fact that defendant Coulter had been charged in state court with various criminal offenses arising out of the April 27, 2008, events at issue in this case. On October 29, 2012, defendants moved for leave to modify this court's case management order and to stay trial where the state criminal case had not yet been adjudicated. The court granted the motion on November 9, 2012. Adjudication of defendant Coulter's criminal case was delayed, and defendants filed a motion to continue stay on March 22, 2013, which the court granted by order entered March 26, 2013, extending also the discovery deadline to July 31, 2013.

On August 22, 2013, in response to a court order, the parties filed a joint status report informing that all criminal charges previously pending against defendant Coulter had been dismissed, and requesting a dispositive deadlines motion of October 4, 2013. Such request was granted by text order entered August 29, 2013. Defendants later moved to extended the dispositive motions deadline to November 8, 2013, (DE 56), which motion the court granted by order entered October 1, 2013. Defendants filed the instant motion for summary judgment on November 8, 2013, arguing that defendant Coulter acted at all times with probable cause, and is further entitled to qualified immunity. Defendants also contend that all claims against defendant Spring Lake fail as a matter of law, and that plaintiffs are not entitled to punitive damages.

2

## STATEMENT OF FACTS[1]

The undisputed facts of this case are as follows. On April 27, 2008, at approximately 5:53 p.m., the SLPD received a call from an individual stating that shots were fired inside 427 Vass Road. Craddock Dep. 20, 32-33 (DE 59-1). The caller further stated that police needed to respond immediately. Id. at 20. The caller did not provide her name or telephone number. Id. The dispatcher sent a dispatch to all units on call advising them that there was a report of shots fired at 427 Vass Road. Id. at 22-23.

Defendant Coulter was one of the officers who received that dispatch, and advised he was en route. Coulter Dep. 59 (DE 59-2). Defendant Coulter was familiar with the residence as a result of numerous complaints regarding drug activity the SLPD had received about that address. Id. at 47. Defendant Coulter instructed the responding officers – Officers Singletary, Sutton, and Harris – to have a staging meeting at the intersection of Vass Road and North Bragg Boulevard so that defendant Coulter could brief them and advise as to next steps. Id. at 61, 63. He did so because ninety-three (93) percent of calls the SLPD responded to regarding a shooting incident involved at least one gunshot victim. Id. at 62-63. Defendant Coulter told the other officers about the previous complaints received regarding this residence, and that someone was possibly shot therein. Id. at 63.

When the officers arrived at 427 Vass Road, they split up looking around the outside of the residence for, among other things, blood. Id. at 67-69. Officer Singletary went to the left side of the home, officers Harris and Sutton went to the right side. Id. at 66. Defendant Coulter went to the front of the residence. Id. The officers found no blood, ammunition, or evidence of drugs outside of the residence. Id. at 68-69. Defendant Coulter smelled neither gunshot residue nor marijuana at

---

[1] Many of plaintiff's and defendants' exhibits overlap. In such cases, the court will refer to defendants' exhibit.

this time. Id. Defendant Coulter knocked on the front door and identified himself as an officer with the SLPD. Id. at 70. Defendant Coulter could hear what sounded like people running back and forth inside the house, and furniture being moved or turned over. He also heard whispering and saw people peeping through the windows. Id. at 69-70. This activity was consistent with what often took place when Coulter approached a residence involved with criminal activity. Id.

Here the parties' accounts diverge. According to defendants, defendant Coulter was knocking for twenty (20) to thirty (30) minutes with no response. Id. at 71-74. He first knocked on the front door for five to six minutes, then went to the back door, and again knocked and identified himself as an SLPD officer for some time. Id. at 71. The owner of the residence, Mrs. Lula Isaac ("Isaac") then arrived. Id. at 76-77. After defendant Coulter explained to her that police were responding to a reported shooting incident and wanted to enter to determine if anyone was hurt, Isaac gave both verbal and written consent for police to enter. Id. at 77. Defendant Coulter returned to the door of the residence once more and knocked, at which time plaintiffs came out. Id. at 77-78. Thereupon, officers handcuffed plaintiffs, and defendant Coulter and Officer Harris performed a sweep of the house. Id. at 80-81, 100.

Plaintiffs' account differs. Plaintiffs assert that immediately upon hearing defendant Coulter knocking, they went to the door to talk to defendant Coulter to figure out what was going on. Wallace Dep. 105 (DE 59-4); Jones Dep 60 (DE 59-5); Taylor Dep. 101 (DE 59-3). Defendant Coulter demanded that plaintiffs open the door, claiming he had a search warrant although, looking through the peep hole, plaintiffs could see that he did not. Wallace Dep. 105; Taylor Dep. 101. Defendant Coulter broke the peep hole that plaintiffs were looking through with his flashlight. Wallace Dep. 105; Taylor Dep. 105. He continued beating on doors trying to get into the house, and

4

was acting angry. Wallace Dep. 111; Jones Dep. 61. Plaintiffs were afraid to open the door because of defendant Coulter's behavior. Wallace Dep. 111. Defendant Coulter moved around the house beating on doors and twisting doorknobs trying to get in. Id. at 115. When defendant Coulter was at the back door, plaintiffs asked him if it would be safe for them to come outside, and he responded it would. Id. at 116; Taylor Dep. 107. Plaintiffs opened the back door, and defendant Coulter grabbed them one by one and threw them out of the house at gunpoint. Wallace Dep. 119; Jones Dep. 67. Officers handcuffed plaintiffs. Wallace Dep. 120; Jones Dep. 67-68. Defendant Coulter then went and searched the residence without permission. Wallace Dep. 126; Taylor Dep. 126.[2]

It is undisputed that at some time before the police arrived, plaintiffs had been smoking marijuana in the residence. Wallace Dep. 103-04; Taylor Dep. 99-100; Jones Dep 58. It is also undisputed that when plaintiffs opened the door to come out of the house, defendant Coulter could smell the odor of marijuana.[3] Coulter Dep. 78. Plaintiffs did not seek any medical treatment as a result of this encounter. Wallace Dep. 122; Taylor Dep. 128; Jones Dep. 68. Officers discovered a gun in the house. Coulter Dep. 79. A weapons check showed it was stolen in Fayetteville. Id. at 102. At this time, the SLPD was required to contact the Cumberland County Sheriff's Department to conduct any felony investigations. Coulter Dep. 102-03. Because of this requirement, defendant Coulter contacted the Cumberland County Sheriff's Department, and froze the scene until their

---

[2] Of note, plaintiff Jones's testimony significantly diverges from the other plaintiffs here as he testifies that although Isaac was not present when plaintiffs came out of the residence, defendant Coulter did not enter the residence until Isaac arrived and gave her consent to a sweep. See Jones Dep. 86 ("Q: So [Isaac] came up and went in the house with Coulter? A: Yes. Q: And that was the first time he went inside the house; wasn't it? A: Yeah . . . .").

[3] In their response in opposition to defendants' motion for summary judgment, plaintiffs contend that defendant Coulter did not smell marijuana until he entered the residence, arguing, without citation, that he testified that he did not smell marijuana until he entered. Defendant Coulter, however, clearly testified that he smelled marijuana outside of the residence once plaintiffs opened the door. See Coulter Dep. 68. Plaintiffs fail to point to any contrary evidence, and so fail to raise a genuine dispute regarding this fact.

5

arrival. Id.

Prior to this encounter, it is undisputed that defendant Coulter twice stopped plaintiff Wallace when plaintiff Wallace was driving. On one occasion defendant Coulter jumped out in front of plaintiff Wallace's car as he was pulling onto the road from a friend's residence and then asked him a number of questions which plaintiff Wallace answered. Wallace Dep. 79-81. Defendant Coulter then told plaintiff Wallace that he did not want to see plaintiff Wallace around the area anymore. Id. On the other occasion, defendant Coulter stopped plaintiff Wallace, but as defendant Coulter approached the car and saw who it was, he apologized and said he had pulled over the wrong person. Id. at 84.

**COURT'S DISCUSSION**

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the

truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49.

B.  Analysis

1.  Plaintiffs' § 1983 Claim Against Defendant Coulter

Plaintiffs assert a claim against defendant Coulter under 42 U.S.C. § 1983. To prove a claim under § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159-60 (4th Cir. 1997). Defendants argue that plaintiffs have failed to raise a genuine issue of material fact that defendant Coulter violated § 1983, contending, first, that his detention of plaintiffs was lawful; second, that he did not perform any unlawful search; and third, that his use of force did not violate plaintiffs' constitutional rights. Defendants further maintain that defendant Coulter has qualified immunity for these actions.

a.  Detention of Plaintiffs

Defendants contend that the detention of plaintiffs' was lawful because it was supported by probable cause. Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. A seizure based upon probable cause is a reasonable seizure. Dunaway v. New York, 442 U.S. 200, 213 (1979).

7

Defendants assert that defendant Coulter had probable cause to detain defendants based upon: the fact that the call reported "shots fired"; his prior knowledge of complaints concerning drug activity at the Vass Road residence; and his hearing plaintiffs shuffling back and forth inside the house, whispering, moving furniture, and peering out of the blinds. Defendants further assert that even if these factors did not give rise to probable cause, defendant Coulter is entitled to qualified immunity with respect to this detention as he reasonably thought he had probable cause.

"Probable cause will be found to exist when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir. 2002) (quotations omitted). However, the officer is not required to possess evidence sufficient to sustain a conviction. Id. The court considers the totality of the circumstances known the officer at the time. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

"Qualified immunity shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Trulock v. Freeh, 275 F.3d 391, 399 (4th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is an immunity from suit, not merely a defense to liability. Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013). It applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "The significant deference given to the judgment of government officials acting in good faith is particularly appropriate in cases involving law enforcement officials investigating serious crimes." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

8

The specific right alleged to be violated must be defined "at a high level of particularity." Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999). Thus, the appropriate question is whether, at the time of plaintiffs' detention, it was clearly established that the combination of an anonymous call reporting shots fired in a particular residence combined with prior complaints of drug activity at that same residence, as well as his hearing plaintiffs shuffling back and forth inside the house, whispering, moving furniture, and peering out of the blinds could not give rise to probable cause. The court notes that "it is not necessary that probable cause . . . actually exist. It is necessary only that the officer be objectively reasonable in believing that it is present." Torchinsky v. Siwinski, 942 F.2d 257, 260–61 (4th Cir. 1991).

It is clear that an uncorroborated anonymous tip alone cannot provide police with probable cause. See Florida v. J.L., 529 U.S. 266, (2000) (holding that an uncorroborated anonymous tip did not provide officers with the requisite reasonable suspicion needed to perform an investigatory stop). This case, however, involves more than such an anonymous tip. The SLPD received an anonymous call from someone claiming to be a neighbor reporting shots fired in a residence. That residence was suspected to be connected with drug activity. Once officers arrived, the occupants of the building acted suspiciously, refusing to make contact with the officers, running around inside moving furniture, whispering and peeking through the windows.

In United States v. Wiggins, 192 F. Supp. 2d 493 (E.D. Va. 2002), police received an anonymous call from a payphone reporting that someone had been shot in the hand, and ran into a nearby residence, which was located in a high crime area. Id. at 496. When police responded to the residence, they noticed a security camera over the door. Id. Police knocked for several minutes, after which time defendant opened the door. Id. Police informed defendant they were going to do

9

a quick sweep of the residence for a shooting victim, and pushed past defendant over his protests to do so. Id. at 497. The court held that officers had probable cause to enter the residence. Id. at 500. The Wiggins court noted that the anonymous call was made from a location near the residence suggesting the caller may have seen the shooting. Id. It further pointed out that officers observed a security camera above the residence's door, and that, in the officers' experience, such cameras were often associated with drug trafficking. Id. Noting that drug trafficking and firearms go hand-in-hand, the court found that this camera further supported the conclusion a shooting victim could be in the residence. Id. Finally the Wiggins court found the location of the residence in a high-crime area also supported probable cause. Id.

The factors in this case are similar to those present in Wiggins. Like Wiggins, this case involves an anonymous tip regarding shots fired, combined with suspicious circumstances that would indicate drug activity. Given that similar factors to those present in this case have been found to support probable cause, it was objectively reasonable for defendant Coulter to believe he had probable cause to detain plaintiffs. Defendant Coulter is therefore entitled to qualified immunity with respect to the detention of plaintiffs.[4]

---

[4] Defendants also assert that defendant Coulter also had probable cause to seize plaintiffs based upon his detecting the odor of marijuana when they exited the residence. The Fourth Circuit has "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004). However, "a search occurs for Fourth Amendment purposes when officers gain visual or physical access to a room after an occupant opens the door not voluntarily, but in response to a demand under color of authority." United States v. Mowatt, 513 F.3d 395, 400 (4th Cir. 2008) abrogated on other grounds by Kentucky v. King, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011). Gaining access to odors in response to a demand under color of authority would also constitute a search. See Florida v. Jardines, 133 S. Ct. 1409, 1423 (2013) ("And when officers walk up to the front door of a house, they are permitted to see, hear, *and smell* whatever can be detected from a lawful vantage point." (emphasis added)). In this case, whether plaintiffs' opened the door voluntarily or in response to a demand under color of authority is a disputed factual issue. Assuming for purposes of summary judgment that plaintiffs did not voluntarily open the door, the scent of marijuana could only provide lawful support if the resulting search was lawful. Cf. Johnston v. United States, 333 U.S. 10, 16 (1948) (when police illegally searched defendant's room, and from that search gained probable cause to arrest her, the search could not be considered valid as a search incident to arrest); United States v. LeFevre, 685 F.2d 897, 900 (4th Cir. 1982) ("[I]f the arrest is illegal, the search pursuant to it will also be illegal and any items seized will be inadmissible."). As the court discusses below, defendant Coulter's warrantless search of

10

b. The Sweep of the Residence

Defendants assert that it is undisputed that defendant Coulter did not enter the residence prior to obtaining Isaac's consent. Were this assertion true, defendant Coulter's sweep of the residence would not violate § 1983. See Schneckloth, 412 U.S. at 219 (a search may be conducted even without probable cause or a warrant if it is consented to). This assertion, however, is incorrect. While defendant Coulter and plaintiff Jones testified that defendant Coulter only entered the residence after obtaining Isaac's consent, see Coulter Dep. 88; Jones Dep. 86, plaintiffs Wallace and Taylor both testified that defendant Coulter searched the residence prior to Isaac's arrival, see Wallace Dep. 126; Taylor Dep. 126-27.[5]

As noted by defendants, however, the nature of the call, together with defendant Coulter's knowledge of suspected drug activity at the residence, combined with plaintiffs' suspicious activity upon his arrival come together to create exigent circumstances allowing for a brief sweep of the residence. See United States v. Holloway, 290 F.3d 1331, 1338 (11th Cir. 2002) (an anonymous call reporting gunshots and an ongoing fight gave officers a reasonable belief that "an emergency situation justified a warrantless search of Appellant's home for victims of gunfire"). This determination is not precluded by Florida v. J.L. As noted by the court in Holloway, a "crucial

---

the residence was proper, therefore the scent of marijuana is another ground on which defendant Coulter had probable cause to seize plaintiffs.

[5] In their reply in support of their motion for summary judgment, defendants maintain that plaintiffs failed to raise a genuine issue of material fact as to defendants' assertion that Isaac gave defendant Coulter permission to enter the house prior to his entry. Strictly speaking, defendants are correct. While plaintiffs twice assert in their response that defendant Coulter searched the residence without permission, that assertion is buttressed only by a single citation to plaintiff Wallace's testimony which does not support the proposition that defendant Coulter searched the residence prior to receiving Isaac's verbal consent. Nevertheless, pursuant to Federal Rule of Civil Procedure 56(c)(3) the court is permitted – although not required – to consider materials in the record not cited by the parties in evaluating a summary judgment motion. Accordingly, the court considers the above-cited testimony of plaintiffs Wallace and Taylor that defendant Coulter searched the residence prior to obtaining Isaac's consent.

11

distinction between *J.L.* and this case is the fact that the investigatory stop in *J.L.* was not based on an emergency situation." Id. In J.L. itself, the Supreme Court specifically noted that its holding did not reach emergency situations, stating:

> The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.

J.L., 529 U.S. at 273-74. Accordingly, the very real possibility that 427 Vass Road contained a gunshot victim justified defendant Coulter's brief sweep of the residence.[6]

    c.    Use of Excessive Force

Defendants contend that the use of force used by defendant Coulter was *de minimis*, and did not violate plaintiffs' Fourth Amendment rights. "The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of seizures effectuated by excessive force." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). A claim of excessive force is analyzed under a standard of objective reasonableness. Scott v. Harris, 550 U.S. 372, 381 (2007). Thus, the question is whether an officer's actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

Here, both parties agree that defendant Coulter used only a *de minimis* amount of force in detaining plaintiffs. Indeed, all plaintiffs have testified they did not seek any medical attention as

---

[6] Defendants also argue that defendant Coulter's entry into the house was otherwise lawful as a protective sweep securing the residence to prevent any possible destruction of the evidence until a warrant could be obtained, citing Segura v. United States, 468 U.S. 796 (1984). The court need not address this argument.

12

a result of any force used by defendant Coulter. See Wallace Dep. 122; Jones Dep. 68; Taylor Dep. 128. Plaintiff's sole contention is that use of any force in an illegal detention is a violation of the Fourth Amendment right to be free from unreasonable seizures. Where the court has found that plaintiff's seizure was not unreasonable, there is no genuine issue of material fact that defendant Coulter did not use excessive force.

    2.    Plaintiffs' § 1983 and Respondeat Superior Claims Against Spring Lake

In Monell v. New York City Dep't of Social Services, the Supreme Court held that a municipality may not be held liable for violations of § 1983 under a theory of respondeat superior. 436 U.S. 658, 691 (1978). Accordingly, defendants are entitled to judgment as a matter of law on plaintiffs' respondeat superior claim against Defendant Spring Lake.

In Monell, however, the Supreme Court also held that a municipality could be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. To constitute a custom, the unconstitutional practices must be "persistent and widespread . . . practices" Spell v. McDaniel, 824 F.2d 1380, 1388 (1987) (quotations omitted). An unconstitutional custom generally cannot be shown by a single incident. Jordan by Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994). For a plaintiff to show a municipality is at fault for an unconstitutional custom the plaintiff must show "(1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." Spell, 824 F.2d at 1390. A plaintiff must then show a causal connection between the custom and the specific violation at issue by showing that the "occurrence of the specific violation was made reasonably probable by

13

permitted continuation of the custom." Id. at 1390-91.

Plaintiff has not proffered sufficient evidence to show that there is a pattern or practice of illegal searches and seizures by officers employed by defendant Spring Lake. Plaintiff notes that Cumberland County had revoked the SLPD's authority to conduct felony investigations, but that defendant Coulter testified that at the request of the SLPD chief he conducted an investigation into drug activity at 427 Vass Road for approximately two to three weeks prior to this incident Coulter Dep. 47-48, 102-03. This evidence only shows a possibility that defendant Coulter may have, on the orders of his superior, violated a policy preventing the SLPD from conducting felony investigations. This is not evidence of additional illegal searches and seizures by the SLPD.

Plaintiff also notes that Wallace has testified that defendant Coulter stopped him once before, for no apparent reason, as he was leaving a friend's residence, Wallace Dep. 79-81, and on another occasion mistakenly pulled him over believing him to be someone else, before apologizing to him and allowing him to continue id. at 84. These two instances fail to show a "persistent and widespread" practice of unconstitutional searches and seizures. Spell v. McDaniel, 824 F.2d at 1388. Thus, plaintiffs' claim under § 1983 against defendant Spring Lake for an unconstitutional policy or custom fails as a matter of law.

3. Plaintiffs' Negligence Claim Against Defendant Spring Lake

To prevail on a claim for negligent hiring, retention, or supervision in North Carolina, a plaintiff must prove:

> (1) the specific negligent act on which the action is founded ... (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the [employer] of such unfitness or bad habits, or constructive notice, by showing that the [employer] could have known the facts had he used ordinary care in oversight and supervision, ...; and (4) that the injury complained of resulted from the incompetency proved.

14

Medlin v. Bass, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990) (alterations in original, quotations and emphasis omitted). Under North Carolina law there is a presumption that an employer has exercised due care in hiring and retaining their employers. Pleasants v. Barnes, 221 N.C. 173, 19 S.E.2d 627, 629 (1942).

Plaintiffs cite to no evidence of record which would show that defendant Spring Lake was negligent in hiring, retention, or training of defendant Coulter. Indeed, plaintiffs cite to no evidence of record relating to defendant Spring Lake's hiring, retention, or training of defendant Coulter whatsoever. Defendants are therefore entitled to summary judgment on this claim.

4.  Plaintiffs' State Law Claims Against Defendant Coulter

Finally, defendants move for summary judgment on plaintiffs' state law claims against defendant Coulter for false imprisonment, assault, and trespass.

a.  False Imprisonment

"False imprisonment is the illegal restraint of the person of any one against his will." Black v. Clark's Greensboro, Inc., 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). "Restraint must be lawful, or it must be consented to, otherwise it is unlawful." Id. at 228. As discussed above, the detention of plaintiffs was lawful. Accordingly, plaintiffs' claim for false imprisonment fails as a matter of law.

b.  Trespass

A defendant commits a trespass if they "enter[] or remain[] upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Smith v. VonCannon, 283 N.C. 656, 660, 197 S.E.2d 524, 528 (1973). Plaintiffs assert that defendant Coulter committed a trespass when he entered the residence. As the court has concluded that he lawfully

15

Case 5:10-cv-00354-FL   Document 65   Filed 02/13/14   Page 15 of 16

entered the premises on basis of exigency, defendant Coulter entered the residence with a privilege to do so, and defendants are entitled to summary judgment on this claim.

        c.      Assault and Battery

"An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." Dickens v. Puryear, 302 N.C. 437, 444, 276 S.E.2d 325, 330 (1981). Pursuant to N.C. Gen. Stat. § 15A-401(d) "a law-enforcement officer is justified in using force upon another person when and to the extent that he reasonably believes it necessary . . . [t]o prevent the escape from custody or to effect an arrest of a person who he reasonably believes has committed a criminal offense." Plaintiffs note that when defendant "Coulter grabbed each plaintiff and threw them out of the residence, his conduct constituted physical contact." Pls.' Resp. Opp'n Summ. J. 17. While this is true, as the court has already discussed, defendant Coulter's detention of plaintiffs was proper and did not involve excessive force. Summary judgment for defendants is therefore proper as to this claim.

## CONCLUSION

Based upon the foregoing, the court GRANTS defendants' motion for summary judgment (DE 58). The clerk is DIRECTED to close this case.

SO ORDERED this the 13th day of February, 2014.

                                  LOUISE W. FLANAGAN
                                  United States District Judge